**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALEX CICCOTELLI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. _____ |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| FBL FINANICAL GROUP, INC., CRAIG D. HILL, ROGER K. BROOKS, DANIEL D. PITCHER, PAUL E. LARSON, SCOTT E. VANDERWAL, PAUL A. JUFFER, KEVIN D. PAAP, RICHARD W. FELTS, JOE D. HEINRICH, and BRYAN L. SEARLE, | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on January 11, 2021 (the "Proposed Transaction"), pursuant to which FBL Financial Group, Inc. ("FBL Financial" or the "Company") will be acquired by Farm Bureau Property & Casualty Insurance Company ("Parent") and 5400 Merger Sub, Inc. ("Merger Sub," and together with Parent, "Farm Bureau"). Parent currently owns approximately 61% of the outstanding shares of common stock of FBL Financial.

2. On January 11, 2021, FBL Financial's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Farm Bureau. Pursuant to the terms of the Merger Agreement, FBL Financial's stockholders will receive $56.00 in cash for each share of FBL Financial common

stock they own.

3. On March 17, 2021, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of FBL Financial common stock.

9. Defendant FBL Financial is an Iowa corporation and maintains its principal executive offices at 5400 University Avenue, West Des Moines, Iowa 50266. FBL Financial's

common stock is traded on the New York Stock Exchange, which is headquartered in New York, New York, under the ticker symbol "FFG."

10. Defendant Craig D. Hillman ("Hillman") is Chairman of the Board of the Company. Hillman also serves as a director of Parent.

11. Defendant Roger K. Brooks is a director of the Company.

12. Defendant Daniel D. Pitcher is Chief Executive Officer and a director of the Company.

13. Defendant Paul E. Larson is a director of the Company.

14. Defendant Scott E. VanderWal ("VanderWal") is a director of the Company. VanderWal also serves as a director of Parent.

15. Defendant Paul A. Juffer is a director of the Company.

16. Defendant Joe D. Heinrich ("Heinrich") is a director of the Company. Heinrich also serves as a director of Parent.

17. Defendant Kevin D. Paap ("Paap") is a director of the Company. Paap also serves as a director of Parent.

18. Defendant Richard W. Felts ("Felts") is a director of the Company. Felts also serves as Chairman of Parent.

19. Defendant Bryan L. Searle is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

21. FBL Financial is a holding company. Operating under the consumer brand name

Farm Bureau Financial Services, the Company's affiliates offer a broad range of life insurance, annuity, and investment products distributed by multiline exclusive Farm Bureau agents.

22. On January 11, 2021, FBL Financial's Board caused the Company to enter into the Merger Agreement with Farm Bureau.

23. Pursuant to the terms of the Merger Agreement, FBL's stockholders will receive $56.00 in cash for each share of FBL Financial common stock they own.

24. According to the press release announcing the Proposed Transaction:

Farm Bureau Property & Casualty Insurance Company ("FBPCIC") and FBL Financial Group, Inc. (NYSE: FFG) ("FBL Financial Group" or "the Company") today announced that they have reached a definitive agreement under which FBPCIC will acquire all of the outstanding shares of FBL Financial Group Class A and Class B common stock that neither FBPCIC nor the Iowa Farm Bureau Federation ("IFBF") currently own for $56.00 per share in cash. Following the unanimous recommendation of the Special Committee of the FBL Financial Group, Inc. Board made up of independent and unaffiliated directors, the transaction was unanimously approved by FBL Financial Group's Board of Directors. . . .

Approvals

The transaction is subject to the receipt of regulatory and FBL Financial Group shareholder approval, including approval from a majority of unaffiliated FBL Financial Group shareholders, and the satisfaction of specified closing conditions. Specifically, the terms require approval of (i) a majority of the shares of the outstanding FBL Financial Group Class A common stock and Series B preferred stock, voting together as a single class; (ii) a majority of the outstanding shares of FBL Financial Group Class B common stock; and (iii) a majority of all outstanding FBL Financial Group common stock not owned by FBPCIC and its affiliates, IFBF and its affiliates, or their respective directors and officers. IFBF owns 100% of the shares of outstanding Series B preferred stock of FBL Financial Group and will cause those shares to be voted in favor of the transaction.

Transaction Details

Closing is expected in the first half of 2021, subject to the receipt of regulatory and FBL Financial Group shareholder approval and the satisfaction of specified closing conditions. Upon closing, all shareholders of FBL Financial Group other than FBPCIC and IFBF will receive the same per share cash consideration for their shares. IFBF will contribute its FBL common stock to a newly-formed subsidiary

of FBPCIC (which will merge with and into FBL Financial Group in the merger, with FBL Financial Group continuing as the surviving corporation) and will retain an ownership stake in the surviving corporation commensurate with its aggregate percentage ownership of Class A and Class B common stock of FBL Financial Group as of immediately prior to the consummation of the transaction. The transaction is not subject to a financing condition.

Upon completion of the transaction, IFBF will continue to be the majority owner of the Company, and FBL Financial Group common stock will cease trading on the New York Stock Exchange.

Advisors

Barclays Capital Inc. served as financial advisor to the Special Committee of the Board of Directors of FBL Financial Group, and Sidley Austin LLP as its legal advisor. Milliman was also engaged to provide an independent actuarial appraisal of FBL Financial Group to support the Special Committee's evaluation and negotiation process.

Goldman Sachs & Co. LLC served as financial advisor and Skadden, Arps, Slate, Meagher & Flom LLP served as legal advisor to FBPCIC.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

25. Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

26. As set forth below, the Proxy Statement omits material information.

27. First, the Proxy Statement omits material information regarding the Company's financial projections.

28. The Proxy Statement fails to disclose: (i) projected net income; (ii) all line items used to calculate operating income; (iii) projected free cash flows and all underlying line items; and (iv) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows

stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30.     Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisor, Barclays Capital Inc. ("Barclays").

31.     With respect to Barclay's Selected Comparable Company Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies observed in the analysis.

32.     With respect to Barclays' Sum of the Parts Valuation Analysis, the Proxy Statement fails to disclose: (i) the estimated earnings used in the analysis and Barclays' adjustments thereto; (ii) Barclays' basis for selecting 11.0x-13.0x and 6.0x-7.0x multiple ranges; and (iii) the number of fully diluted shares used in the analysis.

33.     With respect to Barclays' Price / Book vs. ROE Regression analysis, the Proxy Statement fails to disclose: (i) Barclays' basis for selecting 1.03x-1.35x multiples; and (ii) the book value excluding AOCI used in the analysis.

34.     With respect to Barclays' Selected Precedent Life Insurance Transaction Analysis, the Proxy Statement fails to disclose Barclays' basis for selecting a range of 1.00x to 1.25x multiples.

35.     With respect to Barclays' Dividend Discount Analysis, the Proxy Statement fails to disclose: (i) the projected dividends used in the analysis; (ii) the terminal values used in the analysis; and (iii) the individual inputs and assumptions underlying the 9.0%-11.0% cost of capital range and the 2% perpetuity growth rate.

36.      With respect to Barclays' Appraisal Valuation Bridge Analysis, the Proxy Statement fails to disclose: (i) the topside adjustments for the Company's non-insurance

operations, including its leasing, investment management, and financial services businesses; (ii) Barclays' basis for attributing no value to the Company's wealth management segment; and (iii) the holding company net losses.

37. With respect to Barclays' Selected Precedent Buy-in Transaction Analysis, the Proxy Statement fails to disclose the premiums paid in the transactions.

38. With respect to Barclays' Analyst Price Targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

39. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

40. Third, the Proxy Statement omits material information regarding the appraisal report provided by Milliman, Inc. ("Milliman") and Milliman's engagement.

41. The Proxy Statement fails to disclose Milliman's basis for making the various assumptions underlying its appraisal report.

42. The Proxy Statement also fails to disclose the terms of Milliman's engagement, including: (i) the amount of compensation Milliman has received or will receive in connection with its engagement; (ii) the amount of Milliman's compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether Milliman has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by Milliman for providing such services.

43. Fourth, the Proxy Statement fails to disclose the timing and nature of all communications regarding the future employment and directorship of the Company's officers and directors, including who participated in all such communications.

44. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

45. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

46. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and FBL Financial

47. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

48. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. FBL Financial is liable as the issuer of these statements.

49. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

50. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

51. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

52. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

53. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

54. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

55. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

56. The Individual Defendants acted as controlling persons of FBL Financial within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of FBL Financial and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

57. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

58. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

59. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

60. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or

necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: April 16, 2021　　　　　　　　　　**RIGRODSKY LAW, P.A.**

　　　　　　　　　　　　　　　　　　By: */s/ Gina M. Serra*
　　　　　　　　　　　　　　　　　　　　Seth D. Rigrodsky
　　　　　　　　　　　　　　　　　　　　Timothy J. MacFall
　　　　　　　　　　　　　　　　　　　　Gina M. Serra
　　　　　　　　　　　　　　　　　　　　Vincent A. Licata
　　　　　　　　　　　　　　　　　　　　825 East Gate Boulevard, Suite 300
　　　　　　　　　　　　　　　　　　　　Garden City, NY 11530
　　　　　　　　　　　　　　　　　　　　Telephone: (516) 683-3516
　　　　　　　　　　　　　　　　　　　　Email: sdr@rl-legal.com
　　　　　　　　　　　　　　　　　　　　Email: tjm@rl-legal.com
　　　　　　　　　　　　　　　　　　　　Email: gms@rl-legal.com
　　　　　　　　　　　　　　　　　　　　Email: vl@rl-legal.com

　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiff*